SHAW et al. v. STANLEY JORDAN & CO.

(Supreme Court, Appellate Division, First Department. December 17, 1909.)

1. SALES (§ 446*)—CONTRACTS—BREACH—ISSUES.

Where a seller gave a sample to a broker to submit to a buyer, and the contract of sale was entered into on that submission, and the written contract provided that the goods should be "as per sample submitted," the court, in an action by the buyer for failure to deliver goods according to the sample, improperly submitted the issue of the buyer's fraud, as the only issue was whether the goods delivered and rejected conformed to the sample.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 446.*]

2. SALES (§ 271*)—SALE BY SAMPLE.

A buyer to whom a sample is submitted may act on the representation that it is a sample of the goods which he is buying.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 769–771; Dec. Dig. § 271.*]

Appeal from Trial Term, New York County.

Action by James G. Shaw and another against Stanley Jordan & Co. From a judgment for defendant, and from an order denying a new trial, plaintiffs appeal. Reversed, and new trial granted.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

William O. Campbell, for appellants.

Hitchings & Palliser (Hector M. Hitchings, of counsel), for respondent.

CLARKE, J. Plaintiffs, under the name of Bradish & Thurston, had been in the business of buying and selling gum arabic for many

years. There are many different grades of gum arabic, and the testimony is that on that account it is always sold by sample. On March 27, 1906, one Curtius, a broker, had an interview with Stanley Jordan, the president of the defendant corporation. Mr. Jordan gave him the prices and quantities, and a sample of gum arabic that the defendant had to sell, which Curtius took to the plaintiffs, as a result of which the plaintiffs agreed to buy, and a selling memorandum was made up reading:

"T. M. Curtius, 5 Platt Street, New York, N. Y., March 27, 1906. Sold for account of Stanley Jordan & Co., to Messrs. Thurston & Bradish, 10 bales gum arabic, spot, 5.6¢ per lb.; 50 bales to arrive, now due, 5½¢ per lb.; 50 bales June delivery, 5¼¢ per lb.; terms 30 days net or less 1% cash. No arrival no sale, covering loss at sea. Accepted. Thomas M. Curtius. Stanley Jordan & Co., Inc., by Stanley Jordan."

Mr. Young testified that the contract of sale laid on his desk for a little time, and he discovered the omission of the words "as per sample submitted," and sent it back to the broker and asked to have the correction made. Mr. Jordan testified to the giving of the sample and the signing of the contract, and that thereafter the broker called on him and asked him to add to his copy of the contract the words "as per sample submitted." "I allowed him to put it in. I took it from the safe and handed it to him. He wrote it in, and I took it back and put it in the safe." "The contract was rectified with my consent, in my presence, and with my knowledge." "The clause in the contract was written there with my knowledge and consent." And the contract in evidence now reads, after the words, "no arrival no sale, covering loss at sea": "As per sample submitted by seller." So that it appears from uncontradicted evidence that a sample of the goods, which the defendant offered to sell, was given the broker negotiating the sale for submission to the proposed buyer, was received and examined by the buyer, and thereafter the written contract was entered into, and that the phrase, which is usual in such contracts, having been omitted, was thereafter inserted in said contract to express the actual transaction, with the full knowledge and upon the consent of the defendant. The contract provided for the immediate delivery of 10 bales, which were then in warehouse. Upon examination of the goods, acceptance was refused upon the ground that they did not conform to sample. Upon the arrival of the 50 bales then in transit, acceptance was also refused, after examination, upon the same ground. The action is for damages for failure to deliver the goods called for by the contract in accordance with the sample submitted.

The case was submitted to the jury upon an erroneous theory. A long correspondence was had between the parties, commencing the day after the contract, and upon receipt by the plaintiffs of the 10 bales then in warehouse, and continuing for some time; the plaintiffs claiming that they had not received what they bought, and the defendant that they had. There was no claim of fraud suggested or hinted at in any of this correspondence. The court submitted to the jury whether the interpolation of the words in the written contract, "As per sample submitted by seller," was fraudulent. The plaintiffs asked the court to charge:

"That it was immaterial as to when the correction was made in that contract; it having been made by the consent and with the knowledge of Stanley Jordan."

The court replied:

"It is immaterial, unless the jury find that the addition in the contract was induced by some fraudulent representation or fraud.

"Counsel for Plaintiffs: I except to your honor's refusal to charge as requested. I ask your honor to charge that there is no evidence of fraud or deceit on the plaintiffs' part.

"The Court: That I leave entirely to the jury.

"Counsel for Plaintiffs: I except."

The contract as amended expressed the transaction as it occurred, and that amendment was inserted with the knowledge and upon the consent of the defendant. We are unable to perceive how any fraud could be spelled out of this transaction. The sample was taken by the defendant from the goods, given to the broker for the express purpose of being submitted to the plaintiffs, was submitted to the plaintiffs, and upon that submission the contract was entered into. The question of fact in the case was: What was sold, and did the goods conform to the sample submitted? There was no possible or suggested fraud on the plaintiffs' part in obtaining the sample, and, having been submitted to them, they were entitled to act upon the faith of the representation that it was a sample of the goods which they were buying. If it represented better goods than the defendant could deliver, that was defendant's fault, not the plaintiffs'. We are unable to perceive from this record any justification for the injection into the case of the element of fraud which was submitted to the jury.

The judgment must therefore be reversed, and a new trial granted, with costs to the appellants to abide the event. All concur.